Kara Lee Hewett v. Triple Point Technology                    COMPLAINT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

-----------------------------------------------------------X

Kara Lee Hewett, Plaintiff

against :

Triple Point Technology, Defendant
Also Doing Business As ION Investment Group
-----------------------------------------------------------X

COMPLAINT

3 : 13 CV 1382 (SRU)

United States District Court
District of Connecticut
FILED AT    BRIDGEPORT

9 / 23        20 13

Roberta D. Tabora, Clerk

By _____
Deputy Clerk

**Injunction as Equitable Relief**

The Plaintiff requests an injunction as equitable relief from the United States District Court that reinstates her as a Senior Business Analyst at Triple Point Technology because of violations in the Family and Medical Leave Act. On September 20, 2013 Triple Point Technology terminated the employment of Kara Lee Hewett and offered a severance package of $21,443.46; however, the Plaintiff would not accept the severance package. At the time of termination, Triple Point Technology had a mandatory obligation to allow Family and Medical Leave as Reduced Schedule Leave, Intermittent Leave or a "Light Duty" assignment for twelve weeks.

The Plaintiff has an uninsurable genetic immune deficiency called hypogammaglobulinemia that requires insurance from an employer group health plan or the government because insurers such as Independent Blue Cross will not rate or insure individuals with this diagnosis. [Exhibit One: Uninsurable Medical Conditions] Also the Plaintiff has asthma and a history or recurrent or severe pulmonary infection to childhood. As a result, the Plaintiff would suffer irreparable harm if Triple Point Technology cancels her insurance as of September 30, 2013 as planned. Triple Point Technology violated labor laws for employer health plans that require the continuation of employee insurance and a light duty assignment for twelve weeks during the serious medical condition of an employee based on the Family and Medical Leave Act. The Department of Labor which enforces the Family and Medical Leave Act allows an employee to file a lawsuit without a preliminary investigation.

**Remedy at Law:**

The Plaintiff prays that the Court grant such relief, including reinstatement as a Senior Business Analyst at Triple Point Technology, with backpay and punitive damages for intentional or reckless disregard of the Plaintiff's Family and Medical Leave Act rights as follows:

- Wages for Twelve Weeks of "Light Duty" Assignment during FMLA $31,384

- Punitive Damages for Intentional or Reckless FMLA Violation $31,384

Kara Lee Hewett v. Triple Point Technology                                    COMPLAINT

**Subject Matter Jurisdiction**

 This complaint arises from violations of the Family and Medical Leave Act, as codified.

**Venue**

 The United States District Court of Connecticut is the proper venue for this lawsuit because the cause of action arose in Fairfield County at Triple Point Technology's office building which is located in the Connecticut District at 301 Riverside Avenue, Westport, Connecticut 06880.

**Statement of Facts (Rule 8)**

1. **SATISFACTORY EMPLOYMENT RECORD**

 As an overview of the Plaintiff's employment history at Triple Point Technology, Carlos Lebrija hired the Plaintiff on July 11, 2011 at a salary of $130,000. At the annual performance appraisal in 2011, Carlos awarded a merit salary raise and annual performance bonus. At the annual performance appraisal in 2012, Carlos awarded a merit salary raise and annual performance bonus for a second year. The Plaintiff's employment performance has been satisfactory because Human Resources has never reprimanded her or provided any notice of performance issues or infractions.

2. **HISTORICAL DISABILITY AND SERIOUS MEDICAL CONDITION DISCUSSIONS**

 Carlos Lebrija and the Plaintiff have discussed her disability, reasonable accommodation and Family and Medical Leave on numerous occasions during her employment with email evidence dating from June 23, 2012 to the current time, and the issue of the Plaintiff's scheduled hours and work during a pulmonary infection has been discussed before. The Plaintiff became eligible for the Family and Medical Leave Act on July 11, 2012, and Triple Point Technology allowed medical leave as long as the work was completed without any formal time tracking. The Plaintiff experienced recurrent lung infections from June, 2012 through November, 2012. The Plaintiff experienced another instance of a pulmonary infection in March, 2013. The Plaintiff uses asthma medication daily; however, doctors prescribe additional

medications during a pulmonary infection.

### 3. CURRENT SERIOUS MEDICAL CONDTION FOR FMLA LEAVE

The second year of FMLA eligibility ran from July 11, 2013 through July 11, 2014. In August, 2013 the Plaintiff developed a lung infection and asthma attacks. At the time of this serious medical condition, Triple Point Technology conducted user acceptance testing of their software. Rather than call in sick, the Plaintiff worked and took time in the morning, over lunch and after work for nebulized or inhaler asthma medications. On August 16, 2013 Brian Seidman, a manager, sent numerous emails about UAT tests for a project, and the Plaintiff approached Carlos Lebrija that she had a pulmonary infection yet pushed herself to work while ill because she felt pressured by the deadlines. On August 19 and 20, 2013 the Plaintiff missed work for two days because of a pulmonary infection. On August 21, 2013 she returned to work and completed the UAT tests. Triple Point Technology did not provide the FMLA Eligibility or Designation Notices for these sick days or the doctors' appointments.

During the August, 2013 UAT tests, the Plaintiff worked in the office full-time and went to her house about two miles from the office during the day for nebulized asthma treatments. When she returned to work following the pulmonary infection, she requested on-site medical facilities for the usage of her asthma medications in the office so that she could work full-time with medical leave for medical treatments, medications and doctors' appointments.

On August 23, 2013, Lindsey Lehn in Human Resources wrote an email that the Plaintiff "may begin using the vacant office in 257 to administer your medical treatments. This should optimize your working hours and accommodate your medical needs." Lindsey Lehn advised that the Plaintiff may "open the window in the office and leave the office door closed for a period of time after your treatments to prevent any wafting of chemicals into the office space." [Exhibit Two: Email from Lindsey Lehn]

On Monday September 16, 2013, another lung infection caused the Plaintiff to miss work. Claudine Rafferty in Human Resources corresponded by email on September 17, 2013 that the Plaintiff should mark one sick day for Monday, September 16, 2013 and half a sick day for Wednesday,

September 18, 2013 which was a doctor's visit with Dr. Lester.  Claudine Rafferty did not provide the mandatory Family and Medical Leave Act Eligibility and Designation Notices.  [Exhibit Three: Email from Claudine Rafferty]

On Tuesday the Plaintiff returned to work and used the asthma medications in the office as agreed with Lindsey Lehn.  On Wednesday, Dr. Lester prescribed five months of antibiotics for preventive treatment and provides further clinical indication of a serious medical condition that requires continuing medical treatment with eligibility for the Family and Medical Leave Act Reduced Schedule or Light Duty Assignment for twelve weeks for doctor's appointments.  Also on Wednesday, Dr. Lester ordered immunoglobulin counts, and my blood was drawn on that date by Quest Diagnostics.  The blood laboratory test results have not returned, but Dr. Lester expressed concern about the necessity for a blood plasma transfusion if the test results are too low.

### 4.  **WRONGFUL TERMINATION**

On September 20, 2013, Carlos Lebrija singled the Plaintiff out for termination without notice, and his termination occurred after a month of discussions with Carlos and Human Resources about the Plaintiff's work hour schedules and absences caused by pulmonary infection and asthma.  The Plaintiff was working in the office and waiting for a phone call from Dr. Lester about the immunoglobulin test results and the need for a blood plasma transfusion at the time of the termination.  The Plaintiff requested medical leave for medical treatments, sick days, and doctor appointments in the month preceding the termination.  Triple Point Technology did not provide the mandatory Family and Medical Leave Act Eligibility and Designation Notices prior to the termination.  Triple Point did not assign the Plaintiff to a "Light Duty" assignment for twelve weeks before termination.  Triple Point Technology offered the Plaintiff a severance package and cancelled the Plaintiff's employer health insurance effective September 30, 2013.  The Plaintiff requested reinstatement with backpay.

## 5.   FMLA INTERFERENCE THROUGH FAILURE OF NOTICE

Under the Family and Medical Leave Act the employer must provide an Eligibility Notice and a Designation Notice. When an employer does not provide these notices, then the employer may be liable for FMLA Interference. [For an Eligibility Notice the FMLA Final Rule specified what information an employer must convey to an employee including FMLA leave available in the current 12-month period... right to substitute employer-provided paid leave.... 29 CFR 825.300(b)(2)] A FMLA "serious" medical condition involves incapacitation of more than three days, inpatient hospitalization or a medical condition that requires continuing medical treatments. [For a Designation Notice the FMLA Final Rule specified that once the employer has enough information to determine whether the leave qualifies as FMLA leave, the employer must notify the employee within five business days of making the determination whether or not the leave has or has not been designated as FMLA leave. 29 CFR 825.300(c)(1) ] If the employer does not give notice, then the FMLA Final Rule could make the lack of notice as interference with, restraint of, or denial of the use of FMLA leave. [29 CFR 825.301(e)]

Triple Point Technology knew of the Plaintiff's serious medical condition but terminated her employment rather than start FMLA leave. Triple Point Human Resources never allocated the sick days, doctors' appointments or medical treatments against the Plaintiff's substantive right to Family and Medical Leave during the pulmonary infection and asthma in August and September, 2013.

## 6.   FMLA INTERFERENCE THROUGH TERMINATION

Under the Family and Medical Leave Act, the employer must provide FMLA leave and reinstate the employee irrespective of undue hardship. [The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise or the attempt to exercise" FMLA rights. 29 U.S.C. Sec 2615 (a)(1).] So under the FMLA Triple Point Technology is required to reinstate the Plaintiff as an employee with reduced schedule leave for 12 weeks and employer paid health insurance. Triple Point has interfered with the exercise of the Family and Medical Leave Act rights to a twelve week "Light Duty" assignment through the termination and offer of a severance package.

The Plaintiff's eligibility for the second year of FMLA began on July 11, 2013, and she requested medical leave for the lung infections and asthma in August, 2013. So on the termination date of September 20, 2013, she had the majority of the full twelve weeks of FMLA for reinstatement with a light duty assignment.

## 7.   FMLA SUBSTANTIVE & PROSPECTIVE RIGHTS AS NON-WAIVABLE

The Family and Medical Leave Act prohibits employers from inducing the waiver of the substantive rights to a FMLA Reduced Schedule, Intermittent Schedule or "Light Duty" assignment for the employee's serious medical condition. [Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. An employee may have voluntary and uncoerced acceptance of a "light duty" assignment while recovering from a serious health condition. 29 CFR 825.702(d)] Triple Point Technology terminated the Plaintiff and offered a severance package that would waive her substantive Family and Medical Leave Act rights.

## 8.   REMEDY

The Plaintiff request an injunction from the United States District Court that awards reinstatement, backpay, and punitive damages with twelve weeks of Family and Medical Leave "Light Duty" assignment. If reinstated, then the Plaintiff would request that an attorney who represents the employee meet with Triple Point Technology Human Resources and Manager for a discussion of reasonable accommodations and any other employment issues.

The Plaintiff will suffer irreparable harm if Triple Point Technology cancels her employer group health insurance effective September 30, 2013. The Plaintiff's medical condition of hypogammaglobulinemia is uninsurable without employer or government health insurance.

## 9.   COBRA COVERAGE & 401K DISABILITY WITHDRAWAL

The Plaintiff requests Triple Point Technology promptly provide COBRA coverage and 401K rollover plan information so that the Plaintiff's health insurance does not lapse during the lawsuit. This information is demanded before September 30, 2013.

Kara Lee Hewett v. Triple Point Technology                                    COMPLAINT

**Signature**


*Kara Lee Hewett*


Kara Lee Hewett

6 Silent Grove North

Westport, Connecticut 06880

(203) 233-5620

Kara Lee Hewett v. Triple Point Technology                                  COMPLAINT

## Exhibits

Exhibit 1: Blue Cross Uninsurable Medical Conditions

Exhibit 2: Email from Lindsey Lehn

Exhibit 3: Email from Claudine Rafferty

# EXHIBIT ONE

# Uninsurable conditions and ratable risks



**Independence Blue Cross**

## Uninsurable conditions

The following medical conditions are uninsurable with no time frame for future reconsideration.

acquired immune deficiency syndrome (AIDS)
Alzheimer's disease
amyotrophic lateral sclerosis (ALS)
aplastic anemia
aneurysm (aortic, abdominal, thoracic)
acoustic neuroma (unoperated)
acromegaly
cardiomyopathy
chronic obstructive pulmonary disease (COPD)
cirrhosis
collagen disease
congenital heart defects

congestive heart failure
Crohn's disease
cystic fibrosis
emphysema
hemochromatosis
hemophilia
hepatitis B and C (chronic)
HIV infection
hydrocephalus
hypogammaglobulinemia
ileitis
lupus erythematosus (systemic)

Marfan's syndrome
muscular dystrophy
paraplegia, quadriplegia
polycystic kidney disease
pulmonary hypertension
rheumatic heart disease
schizophrenia
Sjögren's syndrome
stroke
syringomyelia
Tay-Sachs disease
transplants

## Ratable risks

The following medical conditions are uninsurable for specified time frames and ratable risks thereafter. Whether they fall into an uninsurable or ratable category may depend on time frames, severity of conditions, treatment, stability, and prognosis. This is not an all-inclusive list but a reference of many conditions of questionable insurability. Some listed conditions may require a rating that exceeds our risk tolerance, and coverage will be denied indefinitely.

acoustic neuroma (operated)
Addison's disease
adhesions
agoraphobia
agranulocytosis
alcoholism
amputations
ankylosing spondylitis
anorexia nervosa
arteriosclerosis
arteriovenous malformation
atrial fibrillation
avascular necrosis
bronchiectasis
bulimia
cancer
cardiac arrhythmias
carotid artery disease
chronic fatigue syndrome
cleft lip/palate
colitis (ulcerative)
diabetes mellitus

drug use, abuse, or addiction
encephalitis
epilepsey
esophageal stricture
esophagitis (chronic)
fatty liver
fibromyalgia
glomerulonephritis
hemiplegia
Huntington's chorea
hyaline membrane disease
hydronephrosis
hyperlipidemia
hypertension
intermittent claudication
intestinal obstruction
joint replacement
kidney stones
lupus erythematosus (discoid)
meningitis
multiple sclerosis
narcolepsy

nephritis
obstructive sleep apnea
optic neuritis
osteoporosis
pancreatitis
Parkinson's disease
pericarditis
peripheral vascular disease
phlebitis or thrombophlebitis
polymyositis
proctitis
psoriatic arthritis
psychiatric disorders
pulmonary embolism
rheumatoid arthritis
sarcoidosis
spina bifida
tremor
tuberculosis

HMO products underwritten and administered by Keystone Health Plan East. Personal Choice PPO products underwritten and administered by QCC Insurance Company, subsidiaries of Independence Blue Cross - independent licensees of the Blue Cross and Blue Shield Association.

(2010-0105) 05/10

Kara Lee Hewett v. Triple Point Technology                                    COMPLAINT

# EXHIBIT TWO

Hi Megan,

I would like to notify Human Resources of a discussion with my manager this week about reasonable accommodation of an Americans with Disabilities Act disability of asthma and hypogammaglobulinemia.  Specifically Carlos Lebrija expressed concern about my schedule, and I mentioned that you and I had talked about reasonable accommodation of my disability in the past.  In the past as long as my work was completed, I could take leave for medical treatments.  Now Carlos has asked that I work 8:30 am - 6 pm but we have an open issue of accommodation for medical treatments.  Currently he will allow time over lunch for nebulized medications at home.  Typically in the morning, I use an inhaler which is faster allowing an 8:30 am arrival.   He has expressed concerns about my hours, and the time for medications related to asthma has been an issue.  Sometimes when I wake in the morning, I require nebulized asthma medications which results in a late arrival.

I would like to make Human Resources aware that my manager has approached me about my schedule, and we have specifically discussed my hours which may be affected by necessary medical treatments.  If you would like a formal tracking of time for my medical treatments, I qualify for both Americans with Disabilities Act and Family and Medical Leave Act and could book my time for the disability in accordance with those federal laws.

My asthma is genetic and includes a family medical history of sudden cardiac arrest from asthma in my maternal grandmother.  As a result, I promptly nebulize medication even if it means a late arrival.  I also have set my alarm clock earlier so that I have more time as a buffer for an on-time arrival.

Thank you,

Kara Hewett

Aug 16

Kara Hewett

Hi Lindsey, Megan is out of the office so I have forwarded this email to you....

Aug 23

Lindsey Lehn

to **Carlos**, me

Kara,

To confirm our conversation today, you may begin using the vacant office in 257 to administer your medical treatments. This should optimize your working hours and accommodate your medical needs. I do advise that you open the window in the office and leave the office door closed for a period of time after your treatments to prevent any wafting of chemicals into the open office space.

Keep me updated on whether this solution works out well or not.

Best,

Lindsey

**From:** Kara Hewett [mailto:kara.hewett@gmail.com]
**Sent:** Friday, August 16, 2013 9:13 PM
**To:** Lindsey Lehn
**Cc:** Carlos Lebrija
**Subject:** Fwd: Reasonable Accommodation of an ADA Disability

Aug 23

Kara Hewett <kara.hewett@gmail.com>


to Lindsey, Carlos


Hi Lindsey,

Thank you again for meeting with me and finding a resolution to the administration of medication at the office. I'll start bringing my medications and using them as needed in the spare office. The spare office does not have a window, but I'll leave the door closed for about 15 minutes until the vapors are absorbed in the air.

The asthma medications leave a vapor like breathing air into the wind on a cold day, but the medications disappears into the air very quickly much like a person's breath is absorbed into the air on a cold day. If the medications are not absorbed, then I'll contact you.

I nebulized today at home over lunch, and the medication seems to absorb fairly well and quickly into the air without much smell.

# EXHIBIT THREE

**From:** Kara Hewett
**Sent:** Tuesday, September 17, 2013 8:54 AM
**To:** Claudine Rafferty
**Cc:** Carlos Lebrija
**Subject:** RE: Illness

Hi Claudine,

I took a full sick day on Monday.  For Wednesday I have a 30 minute doctor's appointment at 12:30 PM with Dr. Lester of Fairfield County Asthma Allergy and Immunology which I have scheduled over the lunch hour.  Could I take one hour of sick time on Wednesday instead of ½ day?

The primary purpose of the doctor's appointment on Wednesday is a determination of the need for a preventive antibiotic over the next 60-90 days.  Whether the doctor prescribes preventive medication or not, the appointment will be brief.

Thank you,

Kara

**From:** Claudine Rafferty
**Sent:** Monday, September 16, 2013 11:48 AM
**To:** Kara Hewett
**Subject:** RE: Illness

Hi Kara,

I have you taking a sick day today and a ½ sick day on Wednesday.  If this is not correct or you'd rather use vacation time for your dr. appt. on Wednesday, please let me know.

Claudine

Claudine Rafferty

Office Administrator

TRIPLE POINT TECHNOLOGY

Philadelphia, PA 19462

+1 484.530.4382 | office

Kara Lee Hewett v. Triple Point Technology                                    COMPLAINT

+1 484.530.4854 | fax

www.tpt.com

WE KNOW COMMODITIES.

**From:** Kara Hewett
**Sent:** Monday, September 16, 2013 7:31 AM
**To:** Carlos Lebrija; Office Administration
**Subject:** Illness

I will be out of the office today due to a respiratory infection.  This morning I am seeing the doctor at
Westport Family Health about an antibiotic and corticosteroid.  I anticipate returning to work tomorrow,
Tuesday.  On Wednesday at 12:30 PM I have an appointment with Dr. Lester at Fairfield County Asthma,
Allergy and Immunology because this lung infection is the second instance in about one month.