# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KARA LEE HEWETT,
     Plaintiff,

v.

                   No. 3:13-cv-1382 (SRU)

TRIPLE POINT TECHNOLOGY,
     Defendant.

## RULING AND ORDER ON DEFENDANT'S MOTION FOR SANCTIONS

The *pro se* plaintiff, Kara Hewett, filed this civil action against the defendant, Triple

Point Technology ("TPT"), alleging that TPT unlawfully terminated Hewett's employment in

order to frustrate Hewett's efforts to avail herself of medical leave under the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*  Throughout the course of litigation, the parties

have maintained an extremely contentious relationship.  After Hewett sent defense counsel

hundreds of e-mails, submitted dozens of unsolicited and non-relevant documents, and

repeatedly docketed copies of non-meritorious grievance complaints she had filed in an attempt

to suspend/disbar and disqualify defense counsel—including sealed documents from those

grievance proceedings—TPT filed a motion, pursuant to 28 U.S.C. § 1927 and the court's

inherent power, seeking sanctions in the form of attorneys' fees and costs.

For the reasons set forth below, TPT's motion for sanctions is **granted in part**, and

Hewett is ordered to pay TPT $4,380 to reimburse TPT for legal fees incurred as a result of her

bad faith conduct. Additionally, pursuant to Local Rule 16(g)(2), the Clerk is directed not to

accept for filing any paper from Hewett, with the exception of documents related seeking

reconsideration of this Order, until the sanctions have been paid in full.

## I.   Background

Hewett worked as a Senior Business Analyst at TPT from July 11, 2011, until September 20, 2013, when TPT terminated her employment.  Am. Compl. ¶¶ 1–2.  Hewett filed this lawsuit on September 23, 2013, asserting two claims: (1) TPT unlawfully terminated her employment in order to interfere with her ability to take FMLA leave; and (2) TPT unlawfully terminated her employment in retaliation for her prior use of FMLA leave.  Hewett additionally requested leave to participate in electronic filing (doc. 8), which I granted (doc. 10),[1] and filed a motion for summary judgment (doc. 12).  Despite the relative simplicity of her case, Hewett began to file dozens of documents, many of which were inappropriate, repetitious, or misidentified; lacked a basis in law or fact; violated the District of Connecticut's Local Rules of Procedure; or were submitted as "draft" versions of pleadings that she would later move to strike, amend or dismiss.

TPT received service on October 1, 2013 (doc. 9), and counsel for TPT, Nicole Walsh (neé Tuman), appeared on October 22, 2013 (doc. 13).  Walsh timely filed a motion to dismiss (doc. 14).  Hewett was granted two motions for extensions of time to file her opposition brief regarding TPT's motion to dismiss (doc. 18) and to file a reply brief regarding her motion for summary judgment (doc. 25).  I held oral argument on both motions on February 14, 2014, at which point I denied Hewett's motion for summary judgment without prejudice to re-filing after the conclusion of discovery, and granted and denied in part TPT's motion to dismiss.  Hewett was permitted to amend her complaint to remedy certain defects by March 14, 2014 (doc. 59).  Hewett filed her Second Amended Complaint on February 17, 2014 (doc. 64), and she

---

1.   In order to participate in electronic filing, a *pro se* litigant must adhere to the rules set forth in the U.S. District Court for the District of Connecticut's Electronic Filing Policy and Local Rules of Civil Procedure, as well as with the Court's Electronic Filing Order.  The litigant must also affirm that she consents to the use of her e-mail address for service and to receive notice of documents filed in her case; waives any claim to hard-copy editions of any "orders, notices, and other documents filed" in her case; agrees to participate in a training session regarding the proper use of the electronic filing system; and has access to a computer that meets the technical specifications required for electronic filing.

additionally moved to "stay all proceedings" until the close of discovery (doc. 67), which I denied (doc. 69).

Although the parties had not held a Local Rule 26(f) conference, Hewett began to file discovery demands, as well as her initial disclosures and damages analyses, on the electronic docket.  Chambers staff and the Clerk's Office notified Hewett that both the Federal and Local Rules of Civil Procedure provided that the parties were not permitted to file "expert witness reports, computations of damages, depositions, notices of deposition, interrogatories, requests for documents, requests for admissions, and answers and responses" except by order of the Court. *See* Fed. R. Civ. P. 5(d); Local R. Civ. P. 5(f)(1).  Hewett disregarded those notices, continued to file discovery materials on the docket, and began to file motions to compel discovery (docs. 78, 80, 82, 83, 84, 85), in addition to filing letters and "notices" purporting to reveal Walsh's "dishonesty."  *See* Pl. Letter to Underhill, J. (Mar. 12, 2014, doc. 71); Pl. Letter to Underhill, J. (Mar. 18, 2014, doc. 73); Pl.'s Notice of Perjury (doc. 79); Pl. Letter to Underhill, J. (Apr. 12, 2014, doc. 85); Pl. Letter to Underhill, J. (Apr. 20, 2014, doc. 90).  During this time, the parties additionally began to submit lengthy and argumentative e-mails to one another and to my law clerk.

I directed that the parties participate in a phone conference to address discovery disputes and to clarify the process of discovery for Hewett.  During that May 1, 2014 conference, I set forth scheduling deadlines for the case; instructed the parties to attempt to resolve their disputes regarding discovery, as required by Local Rule 37, and regarding requests for extensions of time, as required by Local Rule 7(b)3; and ordered the parties to "limit their communications, briefing, and submissions to the court to issues requiring a decision or conference."  Mem. of Conf. held May 1, 2014 (doc. 96).  I additionally explained that, for several of Hewett's concerns that Walsh

had "lied" to her, Walsh had either accurately represented the procedures set forth by the Federal Rules of Civil Procedure or had articulated her client's legal position in its defense against Hewett's suit, and I encouraged the parties to attempt to confer in good faith and to minimize ad-hominem attacks.

Within a month, Hewett began to violate the orders issued during the May 1 conference. At the same time, Hewett's filings regarding defense counsel became increasingly accusatory, and Hewett began to inundate chambers with e-mails regarding Walsh's alleged misconduct. Mot. Hr'g Tr. 21:8–22:2 (July 7, 2014) (doc. 155). Hewett filed a motion for a phone conference regarding outstanding discovery (docs. 107, 108), and also requested discovery sanctions for TPT's alleged failure to comply with the court's May 1 order (docs. 109, 112). Hewett also began filing documents to disqualify Walsh, to notify the court of Walsh's alleged "illegal licensure," and to hold Walsh in contempt (docs. 113, 121, 122, 123, 124, 125, 126, 127, 129). Hewett additionally docketed a copy of a grievance against Walsh that she submitted to the Connecticut State Bar's Disciplinary Committee (doc. 125).

On July 7, 2014, I held a phone conference with the parties in which I attempted to diffuse the growing animosity between Hewett and Walsh, as well as resolve the substantive discovery disputes between the parties. I denied Hewett's motion to disqualify Walsh noting that Hewett's concerns regarding the active status of Walsh's bar license involved concerns with respect to Walsh's admission to the Connecticut State Bar, not the District of Connecticut's bar. Conf. Mem. & Order (July 8, 2014, doc. 137). Hewett noted that because she had filed a grievance against Walsh, Walsh should be disqualified on that basis alone (docs. 122, 123, 124, 124, 125, 129). I denied Hewett's request and noted that as of the date of our conference (July 7), Walsh remained an attorney in good standing in the District of Connecticut bar. *See* Conf.

Mem. & Order (July 8, 2014, doc. 137); Mot. Hr'g Tr. 2:17–20, 5:8–11, (July 7, 2014) (doc. 155). TPT made a verbal request for sanctions, which I denied without prejudice. Mot. Hr'g Tr. 30:19–31:14 (July 7, 2014) (doc. 155). I cautioned Hewett that harassing, abusive, and threatening statements constituted sanctionable conduct. *Id.* 32:11–33:7 (doc. 155). In a gesture of goodwill, Hewett agreed to withdraw her motion for contempt and for summary judgment (doc. 133), and both parties agreed to attempt to resolve their disagreements amicably and to assume good intent in their dealings with one another.

By July 11, 2014, whatever truce had been brokered during the July 7 conference had already fallen apart. Hewett resumed her campaign to disbar Walsh and filed numerous documents that had been submitted under seal to the Connecticut State Bar Grievance Panel on the public docket in her federal case (docs. 138, 141, 142). Hewett refused to accept electronic service of discovery, and when Walsh sent discovery to the mailing address Hewett provided for service, Hewett filed a police report against that mail courier and filed a "notice of criminal trespass and invalid delivery service." (doc. 143). Hewett additionally stated that as the "sister of an active Federal Bureau of Investigation Supervisor," she perceived "any unauthorized trespass of her property or home as a personal threat." *Id.* TPT interpreted Hewett's statement as a threat.

During the breakdown of the July 7 cease-fire agreement, Hewett also filed a letter alleging that Walsh's efforts to limit discovery to the legal issues in the case had "prejudiced" Hewett, Pl. Letter to Underhill, J. (July 15, 2014, doc. 139), and began filing discovery-related documents on the public docket, in direct contravention of my May 1 and July 7 orders, *see, e.g.*, Pl.'s Request for Production & Admission (doc. 151); Pl.'s Notice of Discovery Demand (doc. 161); Pl.'s Proposed Witness List (doc. 162); Pl.'s First Amended Proposed Witness List (doc.

5

167 and 168); Pl. Letters to Underhill, J. (Sep. 18, 2014, doc. 170, and Sep. 23, 2014, doc. 173);

Pl.'s General Objections to Interrogatories & Requests for Production (doc. 174); Pl. Letter to

Underhill, J. (doc. 183).

On October 28, 2014, in response to a request from TPT, I held another telephone

conference with both parties. During that conference, I again notified Hewett that she risked

being sanctioned on the basis of her filings and communications with counsel. *See* Conf. Mem &

Order (Nov. 4, 2014, doc. 197). Although I declined to impose sanctions at that time, I cautioned

Hewett that a *pro se* litigant could be subject to monetary or other sanctions for abusive,

misleading, or harassing conduct. *Id.*

Following that conference, Hewett continued to ignore my May 1 and July 7 orders by

filing discovery-related documents on the public docket. *See, e.g.*, Pl. Letter to Underhill, J.

(Nov. 24, 2014, doc. 211). On December 1, 2014, following numerous emails from Hewett to my

law clerk over the Thanksgiving holiday, I was also prompted to issue an additional Order

directing Hewett that any request for action by the court must be made by way of motion. (doc.

213)

On December 30, 2014, Hewett again renewed her efforts to disbar Walsh and docketed

the federal grievance claim she brought against Walsh. (doc. 229) Hewett notified Walsh of

those actions in several distressing emails, including statements such as the following:

> I told my mother that Connecticut Bar allowed you to practice. I am going to call
> and write the bar that the case will go trial despite your suspended license. LIFE
> IS IMPORTANT. MY DOCTOR SAVED MY LIFE SO THAT YOU COULD
> START A NEW LAW PRACTICE BY BLOOD BLOOD BLOOD BLOOD
> BLOOD BLOOD MONEY FOR MY LIFE. BLOOD BLOOD BLOOD BLOOD
> BLOOD KEEPS ME ALIVE.
>
> I am telling the bar.

Pl. Letter to Nicole Walsh (Dec. 30, 2014, doc 231-3).

In response, on December 31, 2014, TPT filed the present motion, seeking monetary sanctions under 28 U.S.C. § 1927 and the inherent powers of this court in the amount of costs associated with Hewett's federal court grievance, her Motion to Seal, and the sanctions motion itself. (doc. 231) Over the course of December 31, 2014, Hewett filed several responses to TPT's motion, all of which primarily argued that that Walsh was ineligible to represent Triple Point Technology, and, by virtue of that ineligibility, threatened Hewett's life by profiting from delays in the case. *See* Pl.'s Amended Opposition to Motion for Sanctions (doc. 233); Pl.'s Second Amended Opposition to Motion for Sanctions (doc. 235). TPT filed a Reply Memorandum on January 14, 2015 (doc. 244), to which Hewett responded with several additional briefs and separately filed "exhibits," largely repeating the same arguments. *See, e.g.*, Pl.'s Response (doc. 245); Pl.'s Amended Response (doc. 248); Pl.'s "Exhibit 5 – Pro Hac Vice" (doc. 255); Pl. Letter to Underhill, J. (Feb. 2, 2015, doc. 256); Pl.'s Reply to Defendant's Reply to Motion for Sanctions (doc. 248).

On February 2, 2015, Hewett renewed her motion to disqualify Walsh, restating her allegations regarding Walsh's Connecticut state admission, and adding a complaint regarding Walsh's Motion to appear Pro Hac Vice as required under Connecticut state rules. Pl. Letter to Underhill, J. (Feb. 2, 2015, doc. 259). In this letter, Hewett stated that she planned to contact Walsh's former employer regarding those allegations, and was contemplating an additional charge of negligent supervision against that employer. *Id.* She additionally stated that she planned to file further complaints against Walsh with the New York Bar and the Grievance Committee for the Southern District of New York. *Id.* Hewett subsequently docketed numerous documents relating to her renewed motion and the grievances brought against both Walsh and her former employer in the New York courts. (docs. 261, 262, 263, 264, 265, 267, 268, 269, 271,

273, 274, 275, 276, 278) In addition, Hewett docketed several documents that, although filed as relating to the Motion to Disqualify, in fact included irrelevant anecdotes about her medical and personal history, *see* Pl. Letter to Underhill, J. (Feb. 24, 2015, doc. 272), or repeated allegations of animal cruelty and other personal information about TPT's employees, *see*  Pl.'s "Exhibit – Other Sanction Topics" (doc. 277). Hewett also continued to send lengthy emails to my law clerk, objecting strenuously to my clerk's request that Hewett comply with local rules regarding filing. (doc. 281)

The same day, TPT filed an additional letter in support of its motion for sanctions, stating that Hewett "had sent counsel nearly twenty emails about counsel's supposed ethical violations" over the weekend, including threats to file an additional grievance as well as a Rule 37 motion for sanctions against counsel for TPT's alleged delays in discovery. Def.'s Letter to Underhill, J. (Feb. 2, 2015, doc. 257)

On April 19, 2015, apparently in response to the District of Connecticut Grievance Committee's dismissal of her complaint, Hewett withdrew her pending motion for Walsh's disqualification from the case, and instead moved for sanctions against Walsh under Rules 26(g), 30(d), and 37 of the Federal Rules of Civil Procedure, on the basis that Walsh's alleged delays in discovery denied Hewett assistance of counsel. (doc. 284, re-docketed as doc. 307) I orally denied that motion on April 27, 2015 for lack of evidence that TPT had inappropriately delayed discovery, or that there was any causal connection between the timing of discovery and Hewett's inability to obtain counsel. (doc. 297)

Hewett subsequently continued to make excessive filings,[2] including documents discussing new grievance complaints against other counsel for TPT. *See* Pl.'s "Exhibit Attorney Patrick Walsh – Opposition to Motion for Sanctions" (doc. 315); Pl.'s "Exhibit Attorney Francis

---

[2] At the time of writing, the electronic docket for this case contained 440 entries.

Taafee – Opposition to Motion for Sanctions" (doc. 316). In response to the calendar entry scheduling a hearing on the present motion for sanctions, she filed six additional replies in various formats (docs. 394–399), a "counterclaim" against TPT requesting compensation for the lost wages that she would suffer by attending the hearing (docs. 400, 401, 431, 432), as well as twenty-four separately docketed exhibits and letters to the court purporting to support or explain her earlier conduct (docs. 402–421, 427–30).

On October 19, 2015, TPT moved for additional sanctions on the basis of Hewett's conduct, requesting compensation for the cost of considering her latest round of filings. (doc. 422)  Additionally, TPT moved to strike several of the exhibits that inappropriately cast aspersions on Walsh's character and personal relationships.[3] (doc. 423)

On October 21, 2015, I held a hearing on TPT's motion, as well as Hewett's counterclaim.[4] (docs. 400, 401, 431, 432).

## II.    Discussion

All district courts have the inherent power to supervise and control their own proceedings and to sanction counsel or a litigant for disobeying a court's orders or for bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 49–50 (1991); *F.D. Rich Co., Inc. v. United States*, 417 U.S. 116, 129 (1974); *Mitchell v. Lyons Professional Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (citing *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002)).  Bad faith may occur at any time in the litigation—in the actions leading up to the filing of a lawsuit, or during the pendency of a case.  *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986).  A court may award

---

[3] Although I agree with the defendant that the offending documents are scandalous and abusive, I would like to preserve them for review on appeal. Accordingly, I have ordered the Clerk to seal the offending documents so that they will not be visible to the public, and I informed the parties at hearing that I would not take any of those documents into consideration. *See* Orders (Oct. 21, 2015, docs. 433, 434).

[4] At that hearing, I dismissed Hewett's counterclaim as a procedurally and substantively invalid attempt to amend her complaint without leave of court.

attorneys' fees against a litigant for bad-faith conduct only if the record demonstrates (1) "clear evidence" that the challenged actions "are entirely without color" and are taken for "reasons of harassment or delay or for other improper purposes," and (2) that the district court provided a high degree of specificity in its factual findings regarding sanctions. *Id.*; *see also Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986). A claim is "entirely without color when it lacks any legal or factual basis," and it is colorable when it has "some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).

Additionally, when a court imposes sanctions by exercising its inherent authority, it must first provide the subject of those sanctions with a warning that continued bad-faith conduct or noncompliance with the court's orders can result in sanctions, as well as an opportunity to be heard. *Mickle*, 297 F.3d at 114; *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997) (the court must provide "specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter" prior to imposing sanctions upon a litigant); *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994) (per curiam). "[A]lthough granting a hearing for oral argument would generally be the better practice," the Second Circuit has held that an opportunity to respond in briefing may also constitute a sufficient opportunity to be heard in certain circumstances. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335–36 (2d Cir. 1999).

Federal courts are "ordinarily obligated to afford a special solicitude to *pro se* litigants," *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014); however, that solicitude does not protect a

*pro se* litigant who refuses to comply with court orders or who engages in abusive, vexatious, or oppressive conduct.  The Second Circuit also has noted that while "pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders.  When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988).

    A.  <u>Triple Point Technology's Motion for Sanctions</u>

    On December 31, 2014, Triple Point Technology filed the present motion, seeking monetary sanctions in the amount of costs associated with Hewett's communications to counsel and to this court regarding her federal court grievance against Walsh; Hewett's December 8, 2014 Motion to Seal and the documents sealed therein, which also related to the grievance;[5] and with the sanctions motion itself under 28 U.S.C. § 1927 and the inherent powers of this court.[6] (doc. 231). Hewett has received adequate notice of the grounds for the motion for sanctions, has been warned repeatedly about the possibility of sanctions, and has been able to defend herself against these charges in significant briefing over the course of nine months. Her campaign to smear Walsh's credentials and character in this court has clearly been waged in bad faith. Moreover, Hewett is a sophisticated and experienced litigant, and so she cannot hold up her *pro se* status as an explanation for her determined refusal to comply with court orders. Instead, it is clear that, through an onslaught of abusive and irrelevant filings, Hewett is wrongfully

---

[5] I granted that motion to seal and will not impose sanctions on that basis (doc. 225); however, I agree with the defendants that the filing of the underlying document (doc. 224), which consists of the ruling of the grievance board, should not have been filed in this case.

[6] This ruling takes into consideration TPT's December 31, 2014 motion for sanctions and the subsequent briefing. It does not, however, address the costs associated with TPT's October 19, 2015 Reply Brief (doc. 422). Instead, that motion is mooted by this ruling insofar as it contemplates additional sanctions should Hewett persist with her objectionable conduct.

attempting to bully TPT into settlement. Accordingly, sanctions are warranted, and are imposed under the inherent powers of this Court.[7]

> i.    *Notice*

Hewett received adequate notice of the nature of her wrongful conduct and the risk of sanctions, as well as the authority under which sanctions could be imposed upon her. *See Mickel*, 297 F.3d at 114; *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997).

As set out above, Hewett was warned numerous times about filing documents related to her personal attacks on Walsh. I denied Hewett's first motion to disqualify Walsh during a phone conference on July 7, 2014, on the basis that Walsh was, as of that conference date, an attorney in good standing in the District of Connecticut. *See* Conf. Mem & Order (July 8, 2014, doc. 137); Mot. Hr'g Tr. 2:17–20; 5:8–11 (July 7, 2014, doc. 155). Although I denied TPT's verbal request for sanctions at that time, I cautioned Hewett that harassing, abusive, and threatening statements constituted sanctionable conduct. *Id.* at 32:11-33:7. In particular, I emphasized that *pro se* litigants can be subject to sanctions, including monetary sanctions. *Id.*

During a telephone conference on October 28, 2014, I reminded Hewett of my previous warning, and again notified Hewett that she risked being sanctioned on the basis of her filings and communications with counsel. *See* Conf. Mem & Order (Nov. 4, 2014, doc. 197). I warned

---

[7] Section 1927 provides in relevant part:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

> Hewett's conduct violates section 1927 because she has unreasonably and vexatiously multiplied the proceedings in this case. In *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992), however, the Second Circuit held that Section 1927 cannot be applied to *pro se*, non-attorney litigants. *Id.* at 80. It is unclear whether that rule still applies. *See Davey v. Dolan*, 292 F. App'x 127, 128 (2d Cir. 2008) (affirming district court's imposition of sanctions on *pro se*, non-attorney plaintiff pursuant to § 1927); *see also Neroni v. Coccoma*, No. 3:13-CV-1340 GLS/DEP, 2014 WL 3866307, at *1 n.4 (N.D.N.Y. Aug. 6, 2014), *aff'd sub nom. Neroni v. Hinman, Howard & Kattell, LLP*, 607 F. App'x 113 (2d Cir. 2015) (discussing same). Regardless, this Order can be made under the inherent authority of this Court.

her that many of her filings were inappropriate, and contained ad hominem attacks and factual inaccuracies. *Id.* I ordered her to refrain from submitting such filings, and to restrict her filings to documentation relevant to the issues in this case. *Id.*

TPT's December 31, 2014 motion provided Hewett with clear notice regarding both the legal and factual basis for sanctions. Def.'s Mot. (doc. 231). TPT's motion discussed both section 1927 and this court's inherent power to impose sanctions for frivolous and vexatious conduct. *Id.* at 10–11. And, contrary to Hewett's post-hearing objections (doc. 44), the calendar entry for the hearing on the instant motion on the electronic docket was accompanied by a notice specifically stating that the legal grounds for potential sanctions included both section 1927 and the inherent authority of the court. (doc. 393)

      ii.    *Opportunity to Be Heard*

I held oral argument on the sanctions motion, which provided Hewett with an in-person opportunity to be heard.

In addition, as set out above, before TPT's formal motion was filed, Hewett had several opportunities to speak to me in phone conferences regarding potential sanctions. Following the October 28, 2014 conference, she also filed several letters to me objecting to any potential sanctions. *See* Pl. Notice of Counsel for Threat of Sanctions (doc. 192); Pl. Letter to Underhill, J. (Nov. 9, 2014, doc. 200).

Over the ten months since TPT's motion was filed, Hewett has also been able to respond with significant briefing. *See, e.g.*, Pl.'s Amended Opposition to Motion for Sanctions (doc. 233); Pl.'s Second Amended Opposition to Motion for Sanctions (doc. 235); Pl.'s Response (doc. 245); Pl.'s Amended Response (doc. 248); Pl. Letter to Underhill, J. (Feb. 2, 2015, doc. 256); Pl.'s Reply to Def.'s Reply to Motion for Sanctions (doc. 248); Pl.'s Response to Motion

for Sanctions (Sept. 21, 2015, doc. 394); Pl.'s Mem. in Opp'n to Motion for Sanctions (Sept. 22, 2015, doc. 399).

      iii.    *Hewett's Sanctionable Conduct*

Hewett's persistent personal attacks and her improper docketing and invocation of confidential grievances in this proceeding despite repeated orders from this court prohibiting her from so acting are grounds for sanctions.

      a.    Hewett's actions violated orders of this court.

I have repeatedly ordered Hewett to refrain from filing documents including ad hominem attacks against counsel, and further ordered that she restrict her filings to those relevant to this case. *See* Mem. of Conf. held May 1, 2014 (May 2, 2014, doc. 96); Conf. Mem & Order held July 7, 2014 (July 8, 2014, doc. 137); Conf. Mem & Order held Oct. 28, 2014 (Nov. 4, 2014, doc. 197). I have also ordered her to cease emailing chambers staff with requests for substantive actions from this court. (doc. 213)

As set out in the Background above, in direct contravention of these Orders, Hewett has persisted in filing irrelevant, frivolous, and abusive materials. For instance, before TPT's motion for sanctions, Hewett had filed at least twenty-seven documents relating to various grievance procedures she has instituted against Walsh, twenty-three of which were filed after my May 1 order directing that she keep those materials off of the docket. *See* (docs. 71, 73, 79, 85, 90, 113, 121, 122, 123, 124, 125, 126, 127, 129). She has also filed dozens of documents related to her discovery quarrels with Walsh, despite my repeated instruction that those documents do not belong on this docket. She has sent hundreds of often-abusive emails to opposing counsel, as well as dozens of demanding emails and letters to chambers.[8]

_____

[8] Since the filing of the present motion, Hewett has persisted with excessive filings. *See*, *e.g.*, docs. 261, 262, 263, 264, 265, 267, 268, 269, 271, 273, 274, 275, 276, 278. At the time of writing, a generous assessment of the docket

Hewett's behavior cannot be excused by her *pro se* status. She is a sophisticated, well-educated party who has initiated several prior lawsuits in which she also proceeded *pro se*. *See Hewett v. Graham Capital Mgmt., et al.*, No 3:12-cv-556 (WWE) (D. Conn.); *Hewett v. Murray*, No. 3:12-cv-558 (WWE) (D. Conn.); *Hewett v. Leblang*, No. 1:12-cv-1713 (PKC) (JLC) (S.D.N.Y.); *Hewett v. Barclays Capital, et al.*, 1:12-cv-3539 (PKC) (S.D.N.Y.). Moreover, even if Hewett was initially confused about the appropriate use of the docket, she has been unwilling to conform her conduct to the instructions she has received from myself, chambers staff, and staff in the Clerk's Office, regarding proper procedures, and in fact, has responded aggressively to such advice. *See, e.g.*, Pl.'s "Exhibit of Emails from Ms. Pannu representing Judge Underhill," (doc. 281) (comprising an email exchange between Hewett and my law clerk in which Hewett argues strenuously against my clerk's request that she comply with local rules).

> b.   Hewett's filings discussing her grievance actions were made in bad faith.

A court may award attorneys' fees against a litigant for bad-faith conduct only if the record demonstrates (1) "clear evidence" that the challenged actions are "entirely without color" and are taken for "reasons of harassment or delay or for other improper purposes," and (2) that the district court provided a high degree of specificity in its factual findings regarding sanctions. *Oliveri v. Thompson*, 803 F.2d at 1272.

Grievances brought in before the relevant bodies for the District of Connecticut, the Southern District of New York, and the Connecticut State Bar are confidential, and should not be disclosed to the Judge overseeing the case in which the allegedly grievous conduct occurred. *See* District of Connecticut Local Rule 83.2(c); Southern District of New York Local Civil Rule 1.5(d)(3); Connecticut Statewide Grievance Committee's Procedural Rule 1(D). The protection

---

would find that Hewett has filed upwards of 200 frankly irrelevant and often inappropriate entries in the course of this proceeding.

of confidentiality ensures that such grievances are not used as a tool to threaten or discredit opposing counsel. Accordingly, I directed Hewett not to docket any information regarding her grievances against Walsh in this case, a direction that Hewett has determinedly ignored. Instead, Hewett's repeated efforts to publicize her baseless campaign to have Walsh disbarred and removed from this case plainly constitute bad-faith conduct.

Although Walsh appears to have had an administrative suspension of her Connecticut license at the outset of this case, Hewett's attempts to attack her have been unfounded and abusive. First, Hewett filed several documents moving to disqualify Walsh from this case and to have her held in contempt. *See, e.g.*, (docs. 113, 121–27, 129). Those documents included inflammatory accusations against Walsh, and were labeled with similarly inflammatory titles on the public docket, using language such as "illegal licensure," (doc. 121), "fraud of employer," (docs. 125, 129), and "Class C Felony," (doc. 127) to describe Walsh's professional standing. I denied Hewett's motion for disqualification on July 7, 2014. (doc. 137) At that time, I explained to Hewett the distinction between the administrative hold that she had identified and a material sanction, and warned her about the possibility of sanctions for abusive and harassing conduct. *Id.*

Hewett subsequently docketed information regarding her formal grievance against Walsh with the Connecticut State Bar. *See, e.g.*, (docs. 125, 138, 141, 224). Hewett then filed a "notice" suggesting that TPT and Walsh had engaged in "criminal trespass" when TPT sent a courier to deliver documents to her house, as Hewett had requested. (doc. 143) On December 30, 2014, Hewett also docketed a federal grievance she made against Walsh. (doc. 229) And, further demonstrating her intent to use the grievance procedure as a weapon in this litigation, Hewett chose to inform Walsh herself of the latter action through distressing and threatening emails. *See, e.g.*, Pl. Letter to Nicole Walsh (Dec. 30, 2014, doc. 231-3).

On February 7, 2015, Hewett renewed her efforts to have Walsh disqualified from the case, relying on increasingly irrational and alarming arguments. (doc. 261) For instance, she alleged, among other things, that Walsh was literally threatening Hewett with death by continuing to represent TPT in this case. (doc. 274) On April 5, 2015, Hewett filed a motion for sanctions against Walsh, including yet another baseless allegation against Walsh—namely, that her alleged delays in producing discovery had somehow denied Hewett of counsel—in addition to once again invoking the federal grievance. (doc. 284) That conduct continued up to the date of the hearing on the instant motion. In total, Hewett has filed at least 55 documents making personal attacks on Walsh in this case.

Further indicating Hewett's intent to harass, these actions are consistent with Hewett's history of targeting opposing counsel before the court. *See Hewett v. Leblang*, 1:12-cv-1713 (S.D.N.Y.) (unsuccessful suit against opposing counsel); *Hewett v. Graham Captial*, 3:12-cv-556 (D. Conn.) (unsuccessful motion to disqualify opposing counsel). Indeed, in the present case, Hewett has already begun to instigate similar campaigns against two additional attorneys. *See* Pl.'s "Exhibit Attorney Patrick Walsh – Opposition to Motion for Sanctions" (doc. 315); Pl.'s "Exhibit Attorney Francis Taafee – Opposition to Motion for Sanctions" (doc. 316).

They are also consistent with Hewett's attempt to embarrass and harass in the present case the person who supervised her while she worked at TPT. Hewett has made repeated and duplicative filings suggesting that her previous supervisor was guilty of animal cruelty, and suggested that her termination was an attempt to similarly harm her. *See* Pl.'s Letter to Underhill, J. (Oct. 29, 2014, doc. 191) (discussing those filings). Even after I directed that such filings were inappropriate, Hewett continued to repeat the same statements in multiple filings. *See id.*; *see also* (doc. 277).

To be clear, I am not imposing sanctions on the basis of the grievances themselves, or any statement that Hewett made in any of the related complaints or hearings. As I informed Hewett in our July 7, 2014 phone conference, she has always had the option to file such grievances. *See* Conf. Tr. 3:4–9 (doc. 155). This ruling, however, concerns Hewett's use of the grievance proceedings and the public docket *in this case* as a tool to embarrass and bully the defendants into settlement. That behavior will not be tolerated.

Moreover, Hewett cannot now hide behind the grievance procedures. At the hearing, Hewett attempted to insulate some of her most disturbing statements to Walsh, including repeated assertions that Walsh was literally killing Hewett by continuing to represent TPT, by claiming that those statements were somehow immunized because they related to her grievances against Walsh. The fact that Hewett filed grievances does not give her a right to send abusive emails to opposing counsel, or to file outrageous accusations on the docket for this case.

Similarly, Hewett is not absolved now that many of the offending documents have been sealed to the public. The documents and communications discussed in this ruling have no place in this litigation. They have rendered the electronic docket practically unusable. In additon, they have required review and response, thereby imposing a burden on the defendant, opposing counsel, and this court.

### B.  Sanctions Award

*Pro se* litigants are to be afforded extra leeway by the courts, and I have given Hewett multiple opportunities to change her behavior. As the docket will attest, nothing has worked. Monetary sanctions are now clearly warranted. Furthermore, they are necessary to restore a minimal level of civility and focus on the merits of the present case.

Walsh has provided two affidavits detailing the costs expended responding to Hewett's inappropriate conduct. (docs. 231-1; 422-1) Setting aside the costs related to Hewett's December 8, 2014 Motion to Seal (doc. 223), and the updated Motion for Sanctions (doc. 422), TPT has incurred $6,570 in attorneys' fees.[9] In light of Hewett's claim that she has limited resources, I will require Hewett to pay only two-thirds of that amount, for a total of $4,380.

To ensure the efficacy of this sanction, the Clerk of Court is directed not to accept any filings from Hewett until the amount is paid in full, unless those filings relate to a motion for the reconsideration of this ruling. *See* L. R. Civ. P. Rule 16(g)(2).

C. <u>On-going sanctions</u>

In addition to the specific findings of bad faith in this ruling, this Order should put Hewett on notice that further activity threatening opposing counsel, filing frivolous and irrelevant documents, or otherwise impeding the proceedings may subject her to additional sanctions. Specifically, Hewett is warned that, in the event of an additional violation, the next sanction can include the dismissal of this case, as well as an additional monetary sanction.

**III.  Conclusion**

TPT's motion for sanctions is **granted in part**, and Hewett is ordered to pay $4,380 to the Clerk of Court for the benefit of TPT. The Clerk of Court shall not accept any additional filings from Hewett until that amount is paid, unless those filings relate to a motion for re-consideration of this ruling.

It is so ordered.

---

[9] Walsh affirms that TPT has incurred $750 communicating with Hewett, her client, and the court regarding Hewett's threats of a federal grievance; $2,160 filing the first motion for sanctions; $2,280 reviewing Hewett's subsequent communications and drafting the February 2, 2015 letter to the court; and $1,380 reviewing the pleadings associated with Hewett's second motion to disqualify. Walsh Affs. (docs. 231-1; 422-1) That is, no doubt, a conservative accounting.

Dated at Bridgeport, Connecticut, this 30th day of October 2015.

  /s/ STEFAN R. UNDERHILL

Stefan R. Underhill
United States District Judge